b

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CAREY GARRISON | CIVIL ACTION NO. 1:17-CV-00768 |
| VERSUS | JUDGE DRELL |
| JAMES DEVILLE, *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Defendants filed a Motion for Summary Judgment (Doc. 33). Because Defendants admit they punched and tripped Plaintiff while he was handcuffed, Defendants' Motion for Summary Judgment (Doc. 33) should be DENIED IN PART AND GRANTED IN PART.

I.  Background

Carey Garrison ("Garrison") filed a complaint pursuant to 42 U.S.C. § 1983 and state law, alleging excessive force and battery claims, as well as vicarious liability of the warden (Docs. 1, 12). The named Defendants are Warden James Deville ("Deville") (warden of the Winn Correctional Center ("WCC") in Winnfield, Louisiana), Major Chelette ("Chelette") (a corrections officer at WCC), Captain Bobby Toler ("Toler") (a corrections officer at WCC), and Captain Curry ("Curry") (a corrections officer at WCC). Defendants are sued in their individual capacities only (Doc. 1).

Garrison contends that, while he was incarcerated in WCC in August 2016, Toler and Chelette handcuffed him and escorted him to the Cypress Unit–a segregated housing unit ("SHU")–for a rule infraction.  Garrison claims Toler caused him to fall face-first onto the concrete floor while his hands were cuffed behind him, then lifted him to his feet so Chelette could punch him in the face.  At the Cypress Unit, Curry caused him to fall face-first again, then lifted him and punched him twice.  Garrison contends he was then locked in a shower stall, still handcuffed, where Curry and Chelette began punching him in the body and face.  When Garrison asked why they were beating him, Chelette told him he was hallucinating.  Garrison contends that, while he was with Toler, Chelette, and Curry, he did not resist, provoke, disobey, or misbehave in any manner.  Garrison alleges Defendants injured him.

Garrison contends: (1) Toler has been terminated in the past for use of excessive force; (2) Warden Deville condones the use of excessive force; and (3) Warden Deville has been put on notice of Toler's, Chelette's, and Curry's use of excessive force through grievances, incident reports, unusual occurrence reports, medical records, and narratives.  Garrison further contends Warden Deville was deliberately indifferent to Garrison's safety and is vicariously liable for the acts of his subordinates.  Garrison seeks compensatory, general, and punitive damages.

Defendants answered the complaint (Doc. 14) and filed a Motion for Summary Judgment (Doc. 33).  Garrison filed an opposition to the motion (Doc. 41), to which Defendants replied (Doc. 42).

II.   Law and Analysis

   A.   The standard for summary judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[1]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. See Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

---

[1] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

**B.  There are genuine issues of material fact that preclude a summary judgment in favor of Toler, Chelette, and Curry.**

Defendants contend the alleged use of excessive force resulted in only *de minimis* injuries to Garrison.  Therefore, Garrison has not shown Defendants used excessive force.

**1.  Defendants' Motion for Summary Judgment should be denied as to Garrison's § 1983 claims against Toler, Chelette, and Curry.**

In his deposition, Garrison testified that, on August 25, 2016, while he was walking with his hands cuffed behind him, Toler lifted Garrison's handcuffs up, causing Garrison to bend over until his head was between his legs. (Doc. 33-3, p. 4). In that position, Garrison depended on Toler to hold him up while they walked. (Doc. 33-3, p. 4). Garrison testified he walked bent over from the Ash unit to the main walk, down the main walk, past the canteen, and past the control room. (Doc. 33-3, pp. 4-5). As they walked past the canteen, Garrison tried to stand erect and Toler pushed up on his handcuffs and let go, causing Garrison to fall to the ground and "scar"[2] his knee and face. (Doc. 33-3, pp. 5-6). Garrison did not recall Toler giving him an order before he pushed him to the ground. Doc. 33-3, p. 5). Toler then picked Garrison up by the handcuffs.

Garrison testified that Chelette began walking with them somewhere between the Ash unit and the main walk. (Doc. 33-3, p. 6). Chelette was close by when Garrison fell to the ground. (Doc. 33-3, p. 6). When Garrison got up from the ground and tried to stand up straight, Chelette hit him with a closed hand on the left side of

---

[2] Garrison clarified that he had a small cut that bled on his face, and scratches on a knee. (Doc. 33-3, p. 6).

4

his face in the jaw area. (Doc. 33-3, p. 6). Garrison testified he did not have any discoloration or swelling in his jaw, but it was sore. (Doc 33-3, pp. 8-9).

When they arrived at the Cypress unit, Toler pushed Garrison toward Curry, and Curry grabbed Garrison's handcuffs and escorted him into Cypress (Doc. 33-3, p. 7). Curry then tripped Garrison and let go of the handcuffs, slamming Garrison onto the ground face-first. (Doc. 33-3, p. 7). Garrison testified there was no visible injury from Curry tripping him. (Doc. 33-3, p. 7). Curry then picked Garrison up and put him in a shower that was used as a holding cell. (Doc. 33-3, p. 7). The officers left Garrison, still handcuffed, standing in the shower for a little while. (Doc. 33-3, p. 8). When they returned, Curry unlocked the shower door and Toler stepped in and hit Garrison with closed fists a "couple" (two or three) of times around his ribs and stomach. (Doc. 33-3, p. 8). Garrison testified he did not see any bruises from those blows. (Doc. 33-3, p. 8).

Garrison was examined by an unknown party for injuries afterward. (Doc. 33-3, p. 9). Garrison testified he did not point out his injuries to her, but he had a visible cut over his nose and nothing noticeable on his jaw. (Doc. 33-3, p. 9). A "Facility Anatomical Form" dated August 25, 2016, filled out by "Mary E. Gibb,"[3] states "use

---

[3] The last name is not clearly written and appears to be "Gibbs." (Doc. 33-4, p. 21). There is no professional designation after the name (such as R.N., P.A., L.P.N.). (Doc. 33-4, p. 21). Therefore, it does not appear that Garrison was examined by a health care professional on August 25, 2016.

Another "Facility Anatomical Form" for Garrison, dated March 22, 2018, is signed by "Examiner C/O Ramona Price," while another one dated December 23, 2017 is signed by "Examiner Lt. Flukes" (Doc. 33-4, pp. 36, 38; Doc. 32-1, pp. 8, 10). However, other such forms are signed by licensed practical nurses, who have "LPN" after their names. (Doc. 33-4, pp.

of force–no bodily injuries noted." (Doc. 33-4, p. 21). Garrison did not recall being photographed after the incident but identified a photograph of himself in a cell. (Doc. 33-3, p. 9). When Garrison left segregation about five days after the incident, he still had a little soreness in his jaw and scrapes on his nose and knee. (Doc. 33-3, p. 11). The soreness in Garrison's jaw lasted about two weeks. (Doc. 33-3, p. 11). Garrison did return to the infirmary for his injuries. (Doc. 33-3, p. 11).

Garrison testified that Curry used excessive force on him one other time, in January 2018, by twisting the chain on his handcuffs when they were behind his back. (Doc. 33-3, p. 12). Garrison admitted he did not report an injury from that incident. (Doc. 33-3, p. 12).

In their statement of undisputed facts, Defendants state that Toler shoved Garrison to the floor and punched him three times in the abdomen; Chelette punched Garrison one time in the jaw; Curry tripped Garrison and punched him in the face "a couple of times"; Garrison did not report his injuries to the nurse; and Garrison's injuries did not require any care or treatment. (Doc. 33-5).

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. See Hope v. Pelzer, 536 U.S. 730, 737-38 (2002). "The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes' and consequently the Clause applies 'only after the States has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'" Whitley v. Albers, 475 U.S. 312, 318 (1986) (citing Ingraham

---

20, 23, 37; Doc. 32-1, pp. 7, 9, 11). Therefore, it appears inmate examinations after use of force were not always conducted by health care professionals.

v. Wright, 430 U.S. 651, 664, 671 n. 40 (1977)).[4] Among unnecessary and wanton inflictions of pain are those that are totally without penological justification. See Hope, 536 U.S. at 737-38.

The Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. See Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997). Necessary coercive measures undertaken to obtain compliance with a reasonable prison rule should not be viewed as punishment in the strict sense. See Hope, 536 U.S. at 743-44. Physical abuse directed at a prisoner after he terminates his resistance to authority would constitute an actionable Eighth Amendment violation. See id. The question is whether the officer's action is taken of necessity or as punishment for prior conduct. See Hope, 536 U.S. at 745.

The Court must "decide excessive force claims based on the nature of the force rather than the extent of the injury." See Williams v. Champagne, 13 F. Supp. 3d 624, 632 (E.D. La. 2014) (citing Wilkins v. Gaddy, 559 U.S. 34, 34 (2010)). The extent of injury may provide some indication of the amount of force applied. See Wilkins, 559 U.S. at 37; see also Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (citing Whitley, 475 U.S. at 321) (the extent of injury suffered by an inmate is one factor that may

---

[4] In contrast, "[w]here the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394 (1989).

suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." See Wilkins, 559 at 37 (quoting Whitley, 503 U.S. at 9). Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. See Wilkins, 559 U.S. at 38.

An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim. See id. However, an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury. See id. "The [Supreme] Court concluded in Hudson that the 'supposedly "minor"' nature of the injuries 'provide[d] no basis for dismissal of [Hudson's] § 1983 claim' because the 'blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes.'" Id. (citing Hudson, 503 U.S. at 10). The "core judicial inquiry" is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 37 (quoting Hudson, 503 U.S. at 7). Therefore, the absence of serious injury, while relevant to the inquiry, does not preclude relief. See Siglar, 112 F.3d at 193-94; see also Wilkins, 559 U.S. 34 (2010).

In <u>Carey v. Piphus</u>, 435 U.S. 247, 255-56 (1978), the Court held that compensatory damages such as for emotional harm caused by the deprivation of constitutional rights may be awarded only when the claimant submits proof of actual injury.  See <u>Migis v. Pearle Vision, Inc.</u>, 135 F.3d 1041 (5th Cir. 1998).  The rule in the Fifth Circuit is that, absent proof of actual, compensatory damages, a plaintiff who has been deprived of his constitutional rights may only collect nominal damages.  See <u>Mann v. Smith</u>, 796 F.2d 79, 86 (5th Cir. 19860 (citing <u>Carey</u>, 435 U.S. at 256); <u>see</u> <u>also</u> <u>Thompson v. Solomon</u>, 995 F.2d 221, *3 (5th Cir. 1993).

The United States Fifth Circuit Court of Appeals also adheres to the general rule that a punitive award may stand in the absence of actual damages where there has been a constitutional violation.  See <u>Louisiana Acorn Fair Housing v. LeBlanc</u>, 211 F.3d 298, 303 (5th Cir. 2000), cert. den., 532 U.S. 904 (2001).  Punitive damages are available in § 1983 actions when the defendant's conduct "involves reckless or callous indifference to the federally protected rights of others."  <u>Brown v. Byer</u>, 870 F.2d 975, 982 (5th Cir. 1989) (citing <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983)); <u>see also</u> <u>Thompson</u>, 995 F.2d at *3.  Punitive damages may be awarded in a § 1983 action even without a showing of actual loss by the plaintiff if the plaintiff's constitutional rights have been violated.  See <u>Baltezore v. Concordia Parish Sheriff's Dept.</u>, 767 F.2d 202, 208 (5th Cir. 1985), cert. den., 474 U.S. 1065 (1986); <u>see also</u> <u>Ortego v. Landry</u>, 1998-1948 (La. App. 3d Cir. 8/11/99), 746 So.2d 613, 621, writ dismissed, 99-2674 (La. 11/19/99), 749 So.2d 664.

The Fifth Circuit uses several factors to determine whether there was an unnecessary and wanton infliction of pain in violation of a prisoner's Eighth Amendment right to be free from cruel and unusual punishment. These include:

1. the extent of the injury suffered;

2. the need for the application of force;

3. the relationship between the need and the amount of force used;

4. the threat reasonably perceived by the responsible officials; and

5. any efforts made to temper the severity of a forceful response.

Langlinais v. Nelson Coleman Corr. Ctr., 2015 WL 225222, at *10 (E.D. La. Jan. 15, 2015) (citing Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir.1992)). Four of these factors weigh in favor of Garrison.

For the first factor, Garrison claims minor but discernible injuries–a cut over his nose, scrapes or cuts on one knee, and a sore jaw for two weeks. Defendants point out that Garrison did not complain of any injuries, while Garrison contends the cut over his nose was self-evident. As in Hudson, the minor nature of Garrison's injuries does not provide a basis for dismissal of Garrison's § 1983 claims because the blows directed at Garrison were not *de minimis* for Eighth Amendment purposes. The minor nature of Garrison's injuries is a factor in a determination of the amount of force used by Defendants and the amount of general damages to which Garrison may be entitled.

On the second factor, Defendants admit punching, tripping, and shoving Garrison in their Statement of Undisputed Facts (Doc. 33-5) and do not deny that he

10

was handcuffed at the time. Defendants have not provided any reason for their use of force. Apparently, there was no need for a use of force.

On the third factor, if there was no need for a use of force, then the amount of force Defendants used was unreasonable.

On the fourth factor, the Defendants do not allege any perceived threat from Garrison. Garrison alleges he was handcuffed and Defendants have not denied that.

On the fifth factor, again, since there was no need for a "forceful response," there should not have been a use of force.

Defendants' argue only that Garrison's injuries were *de minimis*. They have not disputed Garrison's claims of minor cuts on his knee and nose, or of a sore jaw for two weeks. Deliberately tripping and punching a restrained inmate is excessive force and inappropriate in most, if not all, instances. Compare Williams, 13 F. Supp. 3d at 633-34 (inmate stated a § 1983 claim against the officer who pulled on his handcuffs and struck him in the head while inmate was fully restrained, causing "cuts, bruises, and swellings"). The fact that Garrison was not severely injured is not determinative of the issue of whether his constitutional rights were violated.

Since there are genuine issues of material fact as to the damages (both general and punitive) to which Garrison is entitled, Defendant's Motion for Summary Judgment (Doc. 33) should be denied as to Garrison's § 1983 claims against Toler, Curry, and Chelette.

> 2. **Defendants' Motion for Summary Judgment should be denied as to Garrison's supplemental state law claims against Toler, Chelette, and Curry.**

Garrison alleges Defendants committed aggravated assault when they punched and kicked him while he was handcuffed. As noted above, Defendants Toler, Chelette, and Curry admit they shoved, tripped, and punched Garrison, but claim he was not seriously injured.

District courts have "supplemental jurisdiction" over claims so related to a federal question "that they form part of the same case or controversy," 28 U.S.C. §1367(a). Rodriguez v. Pacificare of Texas, Inc., 980 F.2d 1014, 1018-19 (5th Cir.), cert. den., 508 U.S. 956 (1993); Whalen v. Carter, 954 F.2d 1087, 1097 (5th Cir. 1992).

State-law tort claims against law enforcement officers are analyzed under general negligence laws, which employ a duty-risk analysis." See Williams, 13 F. Supp. 3d at 634–35 (E.D. La. 2014) (citing Manis v. Zemlik, 11-799 (La. App. 5th Cir. 5/8/12), 96 So.3d 509, 513, writ den., 2012-1283 (La. 10/8/12), 98 So.3d 852; Stroik v. Ponseti, 699 So.2d 1072, 1077 (La. 1997). The same factual disputes which preclude summary judgment on the Eighth Amendment § 1983 claims preclude summary judgment on the state law tort claims for assault and battery. See Williams, 13 F. Supp. 3d at 635. It is noted, moreover, that Defendants did not make any arguments against Garrison's state law claims.

Therefore, Defendants' Motion for Summary Judgment (Doc. 33) should be denied as to Garrison's state law claims against Toler, Chelette, and Curry.

12

### C. Warden Deville should be granted summary judgment on the § 1983 claim and denied summary judgment on the negligence claim.

Garrison alleges Warden Deville is liable under both § 1983 and state law for condoning or allowing Toler's, Chelette's, and Curry's practice of using excessive force on inmates. Garrison also claims Warden Deville is vicariously liable for their actions under state law.

#### 1. Defendants' Motion for Summary Judgment should be granted as to Garrison's § 1983 claims against Warden Deville.

Garrison contends Warden Deville intentionally failed to act after having knowledge of his subordinates' illegal conduct, and condoned previous acts of such conduct by failing to investigate, correct, discipline, or prosecute those committing such acts. Defendants argue that Garrison has not provided anything other than his self-serving allegations to support his claims against Warden Deville.

In his individual capacity, the doctrine of *respondeat superior*–which makes an employer or supervisor liable for an employee's alleged tort–is unavailable in suits under 42 U.S.C. § 1983. See Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that cause plaintiff's injury. See Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951 (1993); Thompkins, 828 F.2d at 303.

Here, Warden Deville cannot be vicariously liable under § 1983 for Toler's, Chelette's, or Curry's actions. Nor has Garrison has alleged that Warden Deville was actually involved in the incident.

Instead, Garrison alleges Warden Deville was aware that Toler, Chelette, and Curry used excessive force against inmates and condoned the practice. In <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 471 (5th Cir. 1999), the Fifth Circuit explained that the official policy requirement may be met in at least three different ways: (1) when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy; (2) where no official policy was announced or promulgated but the action of the policymaker itself violated a constitutional right; or (3) even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need. <u>Burge</u>, 187 F.3d at 471; <u>Unger v. Taylor</u>, 368 Fed. Appx. 526, 534 (5th Cir. 2010), cert. den., 562 U.S. 894 (2010).

Garrison contends vaguely that "numerous offenders informed Deville of the Defendants' conduct through grievances both verbally and written" and "there are numerous civil rights complaints filed in this court." Garrison lists two complaints in this Court – <u>Tyvon Turner v. Deville</u>, 17-cv-00922 (W.D. La.), and <u>John Blunt v. Deville</u>, 17-cv-0928 (W.D. La.). Turner alleges Toler used excessive force against him

14

in January 2017. Blunt alleges Toler used excessive force against him in September 2016. However, as Defendants point out, the incidents complained of by Turner and Blunt could not have informed Warden Deville of Toler's alleged violent proclivities prior to Garrison's incident in August 2016. Garrison's allegations are inadequate to show that Warden Deville customarily allows officers to use excessive force against inmates.

Since Garrison has not shown that Warden Deville is liable to him under § 1983 for violating his constitutional rights through a policy or custom of allowing officers to use excessive force, there are no genuine issues of material fact that preclude a summary judgment in favor of Warden Deville.

    2. **Defendants' Motion for Summary Judgment should be granted as to vicarious liability, but denied as to Garrison's negligence claim against Warden Deville.**

Garrison contends Warden Deville is vicariously liable for the actions of his subordinates under Louisiana state law. Garrison further contends Warden Deville neglected his duty of care owed to inmates in his custody when he failed to act, investigate, correct, discipline, or prosecute unlawful uses of force by his officers, and failed to protect the inmates in his care.

Under Louisiana law, an employer can be held vicariously liable for the intentional torts committed by its employees. See Latullas v. State, 94-2049 (La. App. 1 Cir. 6/23/95), 658 So.2d 800, 803 (citing La. C.C. art. 2320); Williams v. Butler, 577 So.2d 1113, 1116 (La. App. 1st Cir. 1991)). The employer's liability extends to only

those acts which are within the course and scope of employment.  See Latullas, 658 So.2d at 803–04 (citing Lamkin v. Brooks, 498 So.2d 1068 (La. 1986)).

Toler, Chelette, and Curry were employees of LaSalle Management Company ("LaSalle").  Therefore, LaSalle–not Warden Deville–would be answerable for their actions under a theory of vicarious liability.  See Latullas, 658 So.2d at 804.  Therefore, Warden Deville cannot be held vicariously liable under La. C.C. art. 2320 for the actions of Toler, Chelette, and Curry.

However, Garrison also contends Warden Deville neglected his duty of care owed to inmates in his custody when he failed to act, investigate, correct, discipline, or prosecute unlawful uses of force by his officers, and failed to protect the inmates in his care.[5]  Defendants made no arguments against Garrison's state law claims in their brief.  Therefore, Defendants have not shown they are entitled to a summary judgment in favor of Warden Deville on the issue of negligence.

---

[5] To prevail on a negligence claim under La. Civil Code arts. 2315 and 2316, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element).  See Brown v. Lee, 94-104 (La. App. 5 Cir. 7/13/94), 639 So.2d 897, 898-899, writ den., 94-2127 (La. 11/18/94), 646 So.2d 378 (citing Roberts v. Benoit, 605 So.2d 1032, 1041 (La. 1992)); Fowler v. Roberts, 556 So.2d 1, 4 (La. 1989).

16

### III. Conclusion

Because Defendants have not shown there are no genuine issues of material fact, their Motion for Summary Judgment (Doc. 33) should be DENIED as to Garrison's § 1983 and state law claims against Toler, Chelette, and Curry.

Because Defendants have shown there are no genuine issues of material fact, their Motion for Summary Judgment (Doc. 33) should be GRANTED in favor of Warden Deville on Garrison's § 1983 claims and state law claims for vicarious liability.

Because Defendants have not shown there are no genuine issues of material fact, their Motion for Summary Judgment (Doc. 33) should be DENIED as to Garrison's state law negligence claims against Warden Deville.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ.

P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___19th___ day of June, 2019.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge